John Michael Cohan and David Hughes, Non-Parties,
Appellants,
v.
Aaron R. Cohen, Chapter 7 Trustee,
Appellee.
In re: GENIE INVESTMENTS NV INC., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7
Adversary Proceeding No. 3:25-ap-00011-BAJ

FILED INTAKE USBC
JUL 8 '25 AM 9:30

## REPLY IN SUPPORT OF AMENDED MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL

Appellants John Michael Cohan and David Hughes, upon special appearance, reply to the Trustee's Opposition as follows:

### I. THE DEFAULT JUDGMENT IS THE FOUNDATIONAL ERROR—ALL OTHER ORDERS DEPEND ON IT

The Trustee's Opposition ignores the central issue: the default judgment (May 2, 2025) was wrongly entered and must be appealed because:

- No Proper Service: The Trustee never served us individually—only the defunct entities. Yet he now tries to enforce a de facto judgment against us personally.
- No Personal Liability Alleged: The complaint sought relief only against the entities, not us. The judgment cannot bind non-parties. Taylor v. Sturgell, 553 U.S. 880, 893 (2008).
- Fraud on the Court: The Trustee admitted under oath (June 24, 2025) that he never reviewed the bank records before filing the complaint. This proves the default judgment rests on unverified claims. The Trustee's admission that he filed the Complaint without reviewing key evidence constitutes fraud on the court. This newly discovered misconduct reset the appeal period under equitable tolling doctrines (Holmberg v. Armbrecht, 327 U.S. 392).

Every later order flows from this defective judgment. If the default judgment is reversed, all derivative orders collapse.

### II. THE TRUSTEE'S ENFORCEMENT SCHEME PROVES THE JUDGMENT'S IMPROPRIETY

The Trustee claims we lack standing because we were "not named" in the judgment—yet he is using that same judgment to hound us personally. This is a self-contradictory trap:

- If we're not bound by the judgment, then the Trustee cannot enforce it against us.
- If we are bound by the judgment, then we must have standing to appeal it.

He cannot have it both ways. The Trustee cannot simultaneously argue we lack standing while wielding the Judgment as a sword against us. His enforcement actions concede our standing under the "person aggrieved" doctrine (In re Trout, 609 F.3d 1106).

### III. TIMELINESS IS MET—THE DEFAULT JUDGMENT IS THE KEY ORDER

The Trustee argues the appeal is untimely, but the 30-day clock runs from the default judgment (May 2, 2025)—not later enforcement orders. Our motion seeks an extension to challenge that judgment, which is the source of all subsequent errors. The June 24 hearing was the first time Appellants officially learned the Complaint lacked factual basis—triggering the 30-day appeal clock under Kontrick v. Ryan, 540 U.S. 443 (2004).

Even if the Court views the later orders as separately appealable, the most efficient remedy is to vacate the root judgment and render enforcement moot.

### IV. THE TRUSTEE CANNOT BE SHIELDED BY HIS COUNSEL'S DUE DILIGENCE WHILE WE ARE PENALIZED FOR RELYING ON OUR OWN

The Trustee admitted under oath that he did not personally review the relevant bank records before filing the adversary complaint. Instead, he relied on representations from his own counsel and third parties. He now seeks to excuse that failure by claiming his attorney's investigation satisfied his legal obligations under Rule 9011. But this stands in direct contradiction to how we — the Appellants — have been treated.

We relied on the legal advice of our retained counsel, Warren Law Group, in particular, attorney Scott Oh., when entering into the transaction with Velanos. We were specifically advised that:

- The SBLC transaction was legitimate and enforceable;
- It was the most secure and optimal program available;
- The SBLC could be monetized or liquidated in a single day to recover our funds if anything went wrong;
- Amendments to extend the funding timeline or adjust language were drafted and vetted by our legal counsel.

In short, we acted under express legal advice. Yet we are were accused of "gross mismanagement" as though relying on counsel were itself a form of recklessness. If the Trustee can rely on his counsel to justify a lack of direct due diligence before suing parties in federal court, then that same standard must apply to us.

It cannot be both: Either reliance on legal counsel is a valid defense to alleged misconduct, or it is not. The law cannot selectively shield the Trustee while punishing pro se individuals for following the advice of their own attorneys.

This double standard underscores the broader due process issues that underlie our appeal — namely, that we have been systematically denied meaningful procedural rights while being subjected to post-judgment enforcement and reputational harm for actions taken in reliance on professional legal advice.

The Trustee accuses us of "bad faith," yet he:

- Filed a complaint without reviewing bank records,
- Obtained a default judgment without proving claims,
- Now targets non-parties for enforcement.

The Trustee's professed concern for creditors is ironic—if had he reviewed the records pre-lawsuit (as required by law), this appeal would be unnecessary.

If we are penalized for trusting lawyers, then the Trustee's failure to investigate before filing suit is far worse.

## V. THIS IS ABOUT DUE PROCESS, NOT DELAY

We are not trying to "delay" anything. We are demanding:

> Proof of claims before judgment,
> Proper service before enforcement,
> Personal jurisdiction before liability.

These are basic constitutional rights—not technicalities.

## VI. THE COURT SHOULD FIND EXCUSABLE NEGLECT BASED ON EQUITABLE FACTORS

The Trustee argues that Appellants failed to satisfy the standard for excusable neglect. But under Pioneer Inv. Servs. Co. v. Brunswick, courts must evaluate excusable neglect equitably, not rigidly — especially in cases involving pro se litigants navigating complex procedural terrain.

Here, all four Pioneer factors weigh in favor of granting the extension:

1. No Prejudice to Trustee
   The Trustee will not be prejudiced by allowing the appeal to proceed. No distributions have been made, no dispositive deadlines are disrupted, and the same discovery issues are already active in overlapping enforcement efforts.

2. Brief Delay Relative to Ongoing Enforcement
   The length of delay was minimal when viewed in the context of an evolving enforcement timeline. The discovery orders at issue were entered on June 25 and 26, 2025, and Appellants acted promptly thereafter. The appeal was filed on July 2, shortly after the Trustee admitted under oath that he filed the complaint without reviewing the bank records — which we argue is critical to the case's factual and procedural foundation.

3. Justified Reason for Delay
   The delay was caused by legitimate confusion as to when and how Appellants, as non-parties, were required to act. We attempted to participate earlier and were denied standing. Yet once discovery obligations and enforcement pressures were directed squarely at us personally, we moved swiftly to protect our rights. Furthermore, the Trustee's June 24 testimony revealed for the first time a factual defect in his due diligence, giving rise to a good-faith legitimate reason to appeal.

4. Good Faith
   Appellants have acted at all times in good faith. We are not attempting to delay proceedings or obstruct the administration of the estate. We are responding to actions taken against us, individually, without proper process or procedural safeguards. Far from bad faith, this appeal is a lawful, necessary attempt to preserve basic constitutional rights.

## VII. THE TRUSTEE'S CLAIM THAT BANK RECORDS ARE "IRRELEVANT" IS SELF-DEFEATING

The Trustee now claims that the Debtor's bank records are "completely irrelevant" to the determination of whether fraudulent transfers occurred. This is not only illogical — it directly contradicts the fundamental elements of a fraudulent transfer claim under both 11 U.S.C. §§ 548 and 550 and Florida law. A trustee must show the existence of a transfer, the timing, and whether it was made with actual or constructive intent to hinder, delay, or defraud

creditors. That analysis requires factual evidence of the transfers — including their origin, destination, amount, and purpose — all of which are normally found in bank records.

The Trustee filed an adversary complaint alleging improper and possibly fraudulent transfers, then proceeded to compel sweeping post-judgment discovery. He now tries to reverse-engineer his position by saying bank records are "irrelevant." If they were irrelevant, there would be no need to subpoena them (3:24-bk-00496-BAJ Doc. 273), no motion to compel, and no enforcement activity. But there is.

More importantly, the excusable neglect claim is tied not merely to whether bank records were relevant, but to the fact that the Trustee admitted under oath that he filed the complaint without reviewing the evidence. This admission undermines the credibility and fairness of the underlying proceedings — especially when used to justify enforcement against non-parties without service.

## VIII. THE TRUSTEE'S ASSERTION THAT THE TRANSFERS ARE "UNDISPUTED" IGNORES THE LEGAL BURDEN AND THE PURPOSE OF DUE PROCESS

The Trustee's claim that the transfers are "undisputed" by Hughes and Cohan is misleading, circular, and legally insufficient. The fact that a transfer occurred is not, in itself, evidence that it was fraudulent under 11 U.S.C. § 548 or state law. The burden is on the Trustee to prove that each transfer met the statutory criteria — including intent, lack of reasonably equivalent value, and the insolvency status of the debtor at the time of the transfer. These are fact-intensive inquiries that require actual evidence — not assumptions.

Moreover, it is patently false to claim that Hughes and Cohan "never disputed" the transfers. We have contested both the context of the transfers and the inference of fraud attached to them. Even if certain wire amounts are known, the legal and factual meaning of those transfers is absolutely in dispute, and cannot be presumed without examining the surrounding records — including the Debtor's bank accounts, internal communications, and actual use of funds.

The Trustee cannot simultaneously:

    Use compelled discovery to extract private financial records from non-parties,
    Avoid confronting the fact that he filed suit without reviewing core financial evidence, and
    Claim the only issue was "intent," while denying us the opportunity to litigate that very issue.

His position guts the purpose of adversary proceedings and turns due process into a formality. The records he now minimizes were important enough to issue subpoenas and motion practice over — proving that they are not irrelevant, and certainly not conceded.

## IX. THE TRUSTEE MISREPRESENTS THE TIMING AND BASIS OF OUR PARTICIPATION AND APPEAL

The Trustee's attempt to paint Appellants as willfully noncompliant is both factually incorrect and legally disingenuous. It is true that we were informed in February 2025 that the dissolved Judgment Debtors required counsel to appear. But we are not here appealing on behalf of the Judgment Debtors. We are here appealing because, following the entry of the Default Judgment, the Trustee began targeting us personally — as individuals — through compelled post-judgment discovery and enforcement proceedings, without proper service or joinder.

To be clear:

  We are not appealing merely to undo the corporate default as a procedural tactic;
  We are challenging the legality and validity of that default, which we now understand to be defective, based on the Trustee's sworn admission on June 24, 2025 that he filed the adversary complaint without reviewing the underlying bank records;

That admission fundamentally undermines the factual and legal basis for the default judgment and was not known to us until that hearing;

We are also challenging the Court's extension of enforcement powers against us as non-parties without standing, service, or formal joinder.

Furthermore, the Trustee's suggestion that our appeal is an effort to "shield ourselves from personal liability" is not only speculative — it is precisely why we have the right to appeal. When a non-party is compelled to comply with discovery, and faces personal exposure to liability without due process, that party is aggrieved and has standing to appeal. See Walker v. City of Mesquite, 858 F.2d 1071, 1073 (5th Cir. 1988).

The Trustee cannot have it both ways:

He refused to name us in the adversary complaint, denying us the procedural rights of parties;
Yet he now treats us as parties only when it suits his enforcement goals — demanding discovery and accusing us of liability;
And then criticizes us for seeking judicial review of this contradiction.

We are not appealing "belatedly." We are appealing immediately following the post-judgment orders that compel our personal compliance without proper legal footing.

The truth is simple: the corporate entities could not afford counsel. We, personally, could not afford counsel. It was not a matter of refusal — it was a matter of financial impossibility. Once the Court informed us that we could not represent the companies, we respected that ruling and ceased attempting to do so. Instead, we did what was appropriate: we came into the proceeding as individuals and filed a motion for sanctions in our own names. That motion led to a trial. That trial led to a live, evidentiary hearing. And during that hearing, the Trustee — under oath — admitted that he filed the adversary complaint without reviewing the bank records.

It is beyond logic to say we lack standing when we were permitted to try our own sanctions motion and uncovered testimony that calls the foundation of the complaint into question. That is not bad faith — it's proof that this case is riddled with procedural contradictions that demand appellate review.

X. THE TRUSTEE'S CASE IS BUILT ON CONTRADICTIONS, BAD FAITH, AND POST-HOC JUSTIFICATIONS

The Trustee's original theory — as revealed in his response to our first sanctions motion — was that a $1.1 million transaction (3:24-bk-00496-BAJ - Doc. 276 - Paragraph 5) involving Doc. 273, a Chase bank subpoena, justified pursuing their claims. But that theory collapsed before the adversary complaint was even filed. We provided proof that refuted it the day before the complaint was submitted (3:24-bk-00496-BAJ - Doc. 287 - Exhibit L). Instead of reassessing or withdrawing the filing, the Trustee simply omitted any reference to the $1.1 million in the complaint and pivoted to a new, vague theory based solely on "favorable terms" and a speculative "233" examiner line.

That is not diligence — that is litigation by narrative shift. And as courts have consistently held, "favorable terms" alone do not constitute fraud. See In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005) (actual fraud requires intent to hinder or deceive; business terms—even lopsided ones—do not suffice). Without factual grounding, the Trustee is now relying on post hoc rationalizations and strategic framing, not evidence.

This is part of a broader pattern of contradiction and procedural misconduct, including:

• Violating his own requested stays (see 3:24-bk-00496-BAJ - Doc. #318 and 3:25-cv-00164-HES-MCR - Doc. 5) then turning around and accusing others of noncompliance;

• Filing two separate replies to the same motion (3:24-bk-00496-BAJ – Doc. 357 & 360)— an irregular and prejudicial tactic;

• Blocking us from intervening and our right to redress while simultaneously treating us as parties for discovery purposes — a form of de facto litigation without service;

• Implying RICO-style or Madoff-like fraud in tone and narrative, without ever formally alleging it in the complaint;

• Contradicting himself within the same filing: in Line 5, claiming no response was received from us prior to the adversary complaint; in Line 12, claiming the opposite — that a response had been received. (3:24-bk-00496-BAJ - Doc. 329);

• Failing to review all the Debtor's bank records, while accusing us of orchestrating fraudulent transfers — a breach of fiduciary duty and a violation of Rule 9011's duty of reasonable inquiry;

• Launching enforcement efforts against us personally after default was entered against defunct entities — weaponizing the judgment against non-parties without formal joinder;

• Retaliating against us after we filed a motion for sanctions, exposing his failures. The timeline and the full public record, tells the story: once confronted with his own omissions, it is Appellants' contention that the Trustee escalated pressure through federal investigations, compelled discovery, and coordinated enforcement — all without ever proving his original theory.

At the conclusion of the evidentiary hearing on 06-24-25, the Trustee's supervising attorney specifically clarified on the record that only one post-trial brief would be filed. This appeared to be an effort to resolve the Trustee's confusion stemming from earlier procedural missteps by the Trustee and his counsel regarding improper multiple replies and to ensure a fair, orderly record moving forward.

The Trustee and his counsel's conduct is not neutral. It is intentional, retaliatory, and constitutionally defective. It violates the fundamental principle of due process, undermines the integrity of the court, and amounts to fraud upon the court.

We do not bring these claims lightly. But the record built through testimony, transcripts, pleadings, and the Trustee's own filings, now shows a coordinated pattern of procedural abuse designed not to uncover the truth, but to control the narrative and deny us any lawful defense. The numbers confirm it: more than $4 million in small business loans, over $10 million in voluntary refunds, a $9 million reported net loss, and over $50 million in total outflows. That is not fraud. That is not concealment. That is a transparent, distressed operation trying to recover in real time under immense pressure.

Schemes don't refund. They don't leave paper trails. And they don't eat losses. We did all three. On top of that, Case No. 3:24-cv-02392-D, a third party complaint drafted by licensed counsel, corroborates our story regarding Velanos.

CONCLUSION

The Trustee appears to no longer dispute the validity of the June 24 transcript as he did in his response to Mr. Cohan's Emergency Limited Motion to Intervene, which remains pending a ruling or a hearing to be set, and now openly admits that he filed the complaint without reviewing the bank records, relying solely on third-party counsel — confirming the very lack of due diligence we raised. The default judgment is void as to non-parties and fraudulent as to all. We request:

(a) An extension to appeal the May 2, 2025 default judgment,
(b) A stay of all enforcement pending appeal,
(c) An order preventing the Trustee from punishing non-parties for entity debts.

Dated: July 8, 2025
Respectfully submitted in good faith,

[signature: 12 USC 411]

John Michael Cohan and David Hughes, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com; davidchoatehughes@gmail.com

Exhibit List

Exhibit A – Another Post-6pm Service

Exhibit B – Scott Oh's verification regarding a "Velanos' $10MM Wire Trace Report"

Exhibit C – Doc. 276 – Paragraph 5 - $1.1mm adversary complaint basis

Exhibit D – Former Exhibit L of Doc. 287 which dismantled the $1.1MM basis theory

Exhibit E – Doc. 329 Line 5 & Line 12 Trustee contradiction

Exhibit F – Doc. 333 – Previously Exhibit K demonstrating other bad faith acts by the Trustee

Exhibit G - Genie Investments NV Inc.'s reference in third party complaint corroborating Appellants story