**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FILED INTAKE VIA COURIE
OCT 15 '26 AM10:09
Via FedEx

| | |
|---|---|
| In re:<br>**GENIE INVESTMENTS NV INC.**,<br>**Debtor.**<br><br>AARON R. COHEN, Chapter 7 Trustee,<br>Plaintiff,<br>**v.**<br>ZOOMERAL, INC.; CAPITULUM, LLC; CALD HOLDINGS, LLC; GENIE INVESTMENTS II, LLC; BETTER METHODS, LLC; and GENIE'S ANGELS, LLC n/k/a MERKTON GROUP, LLC,<br><br>**Defendants.**<br>NAMED "The Joining Individuals" joining solely in their individual capacities, as identified on the signature pages. | **Case No.** 3:24-bk-00496-BAJ<br>Chapter 7<br><br>**Related Adv. Pro.** No. 3:25-ap-00011-BAJ<br><br>**Related:** In re: David Choate Hughes II, Bankr. C.D. Ill. No. 25-70566 (Gorman, J.)<br><br>**REQUEST FOR EXPEDITED CONSIDERATION**<br><br>Show-Cause Hearing Requested<br><br>**Related Adv. Docs.** 46, 50, 74, 107<br><br>**Related:** Order to Show Cause (Cohan to appear Nov. 9, 2026)<br>Filed in the main case to be heard; copy to be noted on the adversary docket |

**JOINT JOINDER OF NAMED INDIVIDUALS TO BE HEARD IN SUPPORT OF FURTHER ENFORCEMENT OF THE AUGUST 27, 2025 CONTEMPT ORDER [ADV. DOC. 107] AND THE JUNE 25, 2025 COMPEL ORDER [ADV. DOC. 50], FOR A TRUSTEE ACCOUNTING OF WHAT REMAINS CONCEALED, AND FOR A SHOW-CAUSE HEARING ON FURTHER COERCIVE AND COMPENSATORY SANCTIONS PAYABLE TO THE ESTATE**

**DEFINITION, THE "THE JOINING INDIVIDUALS"**

The Moving Parties are named "The Joining Individuals" of this estate. As used throughout this Motion, "**joining individuals**" and "**Individuals**" mean those persons the Debtor scheduled, solicited, or otherwise identified as the parties they owe. Funds were placed with the Debtor and related entities as consideration for a loan and related

contractual undertakings. This paper does not move any scheduled claim from a company to a person. Each individual signing the signature pages appears solely in his or her individual capacity to be heard. No limited liability company, corporation, or other artificial entity is a party to this paper.

David C. Hughes II and John-Michael Cohan are the pre-petition principals and former owners of the Debtor and of the captioned Judgment Debtor entities. They are referred to as the "**Former Owners**." They are not the Chapter 7 debtor. The Debtor is Genie Investments NV Inc. Resignation from office, and later dissolution of related entities, does not take them outside the production obligations already imposed. Adv. Doc. 107 treated them as the managing agents of the defendant entities and applied enforcement and preclusion provisions to the Former Owners by that name. That is how they are named here.

**This is not a new motion to compel**. The Trustee filed that motion (Adv. Doc. 46). This Court granted it (Adv. Doc. 50). The Trustee moved for contempt (Adv. Doc. 74). This Court granted that as well (Adv. Doc. 107). What remains, more than a year later, is a current accounting of what was produced, what the estate had to buy, what is still concealed, and the further sanctions this Court reserved the right to impose.

How this paper is presented.

This Joint Joinder is filed in the main case so these individuals may be heard on administration of this estate and on enforcement of orders already entered. A copy is requested on the adversary docket because that is where Adv. Docs. 50 and 107 live. This paper is not a motion to intervene under Bankruptcy Rule 7024. It does not seek to prosecute the Trustee's causes of action, to control the adversary, to substitute these individuals for the Trustee, or to make any company a party. It asks this Court to use authority it already reserved in Adv. Doc. 107 ¶ 5.

## I. WHY THIS PAPER IS FILED AS ONE DOCUMENT

1. Dozens of named individuals stand behind the same request. **Sixty+** separate papers would consume the smaller claims and force the Trustee and the Court to answer the same request **60+** times. One record, one request, individual verifications. 28 U.S.C. § 1654 and Local Rule 1074-1 are why no company appears. Local Rule 9011-2: a person for whom counsel has already appeared does not sign this paper.

2. Most of these people are small operators. They do not retain a firm to read every paper the Former Owners drop on this docket. The docket has passed the Main

**Case Doc. 759**. Keeping up with that volume would take a full-time legal staff. A handful of individuals have tried to track it and to circulate what matters. The rest of the claimholders cannot know, filing by filing, what the Former Owners now demand of them, interrogatories, witness lists, discovery in a second courtroom, unless this Court says what must be answered and what must not. That is why Relief I is framed as direction from this Court, not as a new blanket gag.

## II. WHAT THE TRUSTEE ASKED FOR, AND WHAT "ALL" STILL MEANS

3. Adv. Doc. 46 asked this Court to compel answers to the first set of Interrogatories in aid of execution and production of the documents identified in the accompanying requests. Adv. Doc. 50 granted that motion and set a fifteen-day deadline. Adv. Doc. 107 found the responses still had not been furnished, **held the Defendant entities in contempt**, required production "including the production of relevant documents," and reserved further sanctions. Execution discovery is "quite permissive." Republic of Argentina v. NML Capital, Ltd., 573 U.S. 134, 138 (2014).

4. "**Relevant documents**" and complete interrogatory answers are not limited to whatever account statements a third-party bank will mail when the estate pays for a subpoena. They include the formation and dissolution files; the bank resolutions, signature cards, and online-access authorizations; and the identity of each person who was authorized to initiate a transfer and each person who in fact initiated or approved material transfers from the accounts that received funds from this Debtor. That last category is not a fishing trip. It is how fraudulent-transfer analysis is done. If a person who was never on a resolution initiated a wire, that fact matters to this estate and may matter to the institution that honored the wire. A statement the Trustee obtained by subpoena does not name that person. The people this Court ordered to answer still have not named that person.

5. **This is not an abstract request.** In sworn testimony given in these proceedings, Hughes and Cohan have each stated that neither of them personally handled the day-to-day banking or wire transactions for the Debtor and related entities, and that this function was instead performed by Caleb Davis. Davis's own deposition testimony in the related adversary proceeding confirms his role with the Debtor was, by his own account, **not** a full-time undertaking: he testified that he began teaching at a school on August 1, 2023, and that his work for Genie Investments was expressly not a full-time job but was performed concurrently with that teaching position. Davis Dep. 5:12-19; 8:18-23.

6. The "The Joining Individuals" take no position on precisely how Davis apportioned his time between these two roles during any given month, and ask that question remain open for the Court. What the testimony does establish, the record shows, is that Davis approached this responsibility as a part-time, secondary undertaking rather than a trained financial professional primary vocation. What the existing record does show, without dispute, is that Davis had no prior professional background, credential, or experience of any kind in institutional securities trading, brokerage account management, or a lending relationship of the size and complexity at issue with Morgan Stanley or any comparable institution. On this record, a person previously earning approximately **$45,000** a year teaching school, Davis Dep. 6:12-14, became, in a comparatively **short period**, the named individual controlling **multimillion-dollar brokerage assets** and **a securities-based line of credit**, and **the trading and lending activity built on top of it**, activity that, by Davis's own sworn description, extended to using borrowed capital in pursuit of a **standby-letter-of-credit trading scheme**. Davis Dep. 34:16-24.

7. "The Joining Individuals" submit that this trajectory, standing entirely apart from whatever became of Davis's teaching duties, is questionable on its face, highly improbable to have occurred on Davis's own independent initiative, and warrants scrutiny rather than acceptance at face value. Davis's own testimony reinforces rather than resolves that doubt. He testified that he personally opened the Morgan Stanley brokerage account and the associated Liquidity Access Line for Genie Investments, Davis Dep. 34:1-12, and that he does not know why he, rather than someone else, was selected for that role, except that he believed it was because he had "a 770 credit score" and a clean record, testifying, in his own words, ***"I was the patsy."*** Davis Dep. 36:4-7. Davis further testified that he told Morgan Stanley it was ***"just"*** him on the account, and that after he did, the institution *"stopped asking questions."* Davis Dep. 36:8-15.

8. **A person who describes himself, under oath, as a "patsy" selected for a clean credit history, and who admits telling the lending institution a materially incomplete account of who stood behind it, is not describing the conduct of someone acting on his own independent initiative.**

   Even if Davis physically initiated a transfer, the question that remains, and that the missing resolutions, signature cards, and online-access records will answer, is whether he did so on his own final decision, or whether the instruction and the authority came from the two Former Owners who now point at him. **That question is sharpened, not answered, by the position Hughes and Cohan**

**have each taken that neither personally directed the Debtor's financial affairs: the <u>same two</u> individuals are the ones who prepared and signed the Statements of Financial Affairs and related disclosures filed in this bankruptcy, and who have separately testified, in these proceedings, to particular financial transactions reaching back years <u>before</u> Davis's own involvement is said to have begun.** The Joining Individuals submit that a person who was not directing or was not aware of the Debtor's financial affairs could not have supplied that information, and that the Former Owners cannot credibly have it both ways.

9. **Nor is the destination of those funds settled:** a substantial portion moved on to other institutions and individuals downstream whose identities remain undetermined on this record, raising further questions of legality and potential fraudulent transfer that only the requested records can resolve. The point of the production sought in ¶ 4 above is not to relitigate credibility from the podium; it is to let the documents answer the question the testimony raised. The bank resolutions, signature cards, and online-access authorization records will show, without argument, who was actually authorized to initiate these transfers and who in fact did so. If those records confirm the testimony, the inquiry ends there. If they do not, "The Joining Individuals" submit that the testimony was false when it was given, under an oath carrying the penalties of perjury, and that this Court and the United States Trustee should be in a position to evaluate that question on a complete record rather than an incomplete one.

10. **The concealment reflected on this record** - of the persons actually directing the Debtor's financial affairs, and of the records that would settle the question, has already cost this estate, and through it these "The Joining Individuals", money the estate should not have had to spend. That cost belongs, as a matter of law and as a matter of basic fairness, on the people who caused it, not on the victims who are now paying for it a second time because of bad actors.

11. **The record previously reflected substantial noncompliance.** The Adv. Doc. 107 deadline expired on or about September 10, 2025. The Trustee has since filed a further submission concerning production and has obtained some bank records by subpoena at estate expense. "The Joining Individuals" therefore do not ask this Court to assume that the Trustee's file is empty. They request a clear accounting identifying:

    **a.** what was produced by the Defendants or the Former Owners;

    **b.** what was obtained independently, including by subpoena;

c. what remains outstanding, including who was authorized to transfer and who transferred; and

d. the cost to the estate of obtaining substitute records. Until that accounting is on the record, the categories the Court ordered produced that did not come from the contemnors remain concealed from this estate.

## III. WHO IS SPEAKING, AND WHO MAY NOT SPEAK FOR AN LLC

12. **This paper is notice on the record.** It does not reclassify scheduled claims. Some joining individuals hold claims in their own names. Some are natural persons who own or control entities the Debtor scheduled as creditors. In either case the signer signs only as a natural person. Scheduled entity claims remain where they are scheduled.

13. "The Joining Individuals" appear as parties in interest in this Chapter 7 case. Their right to be heard rests on the following. First, the Eleventh Circuit has recognized that a party in interest has a right to be heard in a Chapter 7 case. In re Westwood Cmty. Two Ass'n, 293 F.3d 1332, 1337 (11th Cir. 2002) (citing In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 5 (1st Cir. 1999)). Second, a Chapter 7 trustee must, unless the Court orders otherwise, furnish information concerning the estate and its administration when a party in interest requests it. 11 U.S.C. § 704(a)(7). **Third, a motion for an order of contempt made by a party in interest is a contested matter governed by Bankruptcy Rules 9020 and 9014 contempt proceedings run under Rule 9014 as Rule 9020 provides.** Fourth, the Court may enforce its own orders, and may consider information from interested persons in doing so, under 11 U.S.C. § 105(a) and its inherent power. "The Joining Individuals" do not rely on 11 U.S.C. § 1109(b) as the source of their right to be heard, because that section appears in Chapter 11. That section, and Truck Ins. Exch. v. Kaiser Gypsum Co., 602 U.S. 268 (2024), a Chapter 11 case, are cited only to show that "party in interest" is read broadly to include a person who may be directly and adversely affected. It does not mean that ownership of a creditor LLC gives the owner the company's claim. An LLC's rights belong to the LLC. A sole owner generally may not personally assert injuries that belong only to the company merely because harm to the company affects the owner. This paper therefore distinguishes:

- A person whose Genie claim is actually in his or her own name appears individually on that claim.

- A person whose company holds the scheduled or filed Genie claim appears

individually only to the extent that person has an independent, direct personal interest, not merely because the person owns the company.

28 U.S.C. § 1654: each signer conducts only his or her own appearance.

13A. **Protective and alternative requests on standing.** "The Joining Individuals" seek no party status in Adv. Pro. No. 3:25-ap-00011-BAJ, seek no relief that belongs to the Trustee, and do not ask the Court to displace the Trustee. They ask to be heard on enforcement of Adv. Docs. 50 and 107 and on the accounting requested below. If the Court concludes that any further permission is required for them to be heard on those matters, "The Joining Individuals" respectfully request, in the alternative and to that limited extent only, that the Court: (a) permit them, for cause shown, to intervene in those specified matters in the main case under Fed. R. Bankr. P. 2018(a), which is limited to those matters and is not intervention as a party under Rule 7024, the cause being that the orders at issue were entered to obtain records the estate needs and that bear on the claims of the persons signing; (b) treat this paper as a submission by interested persons in support of the Trustee's enforcement of those orders and consider it under 11 U.S.C. § 105(a); and (c) if the Court finds that any individual signer lacks standing, strike or disregard only that signer's signature and proceed on the signatures that remain, with leave for the affected signer to supplement the record within fourteen days. Each signer's standing is independent. The relief requested does not depend on the standing of any one signer, and a defect as to one does not impair another.

## IV. WHAT ADV. DOC. 107 ACTUALLY HELD

14. **The Court held the Defendant entities in contempt. Adv. Doc. 107**. The Court separately prohibited the Defendants and the Former Owners from supporting or opposing designated claims or defenses or introducing designated matters in evidence until they complied, directed that future pleadings of the Defendants or Former Owners filed in violation of that order be stricken, required production within fourteen more days, and reserved further sanctions. Adv. Doc. 107 at 4 ¶¶ 2–5. Main Case Doc. 347 remains in force. Adv. Doc. 107 n.7.

15. Accordingly, this paper does not say that Hughes and Cohan were themselves the named contemnors in Adv. Doc. 107. It says: **the Judgment Debtor Defendants remain subject to the Court's contempt order,** and Hughes and Cohan remain subject to the enforcement and preclusion provisions that Adv. Doc. 107 expressly applied to the Former Owners. A notice of appeal from later orders vacating abatements (Main Case Doc. 712) does not stay Adv. Doc. 50 or

Adv. Doc. 107. Fed. R. Bankr. P. 8007.

## V. THE LAW THAT LETS THIS COURT FINISH WHAT IT STARTED

16. Jurisdiction exists under 28 U.S.C. §§ 157 and 1334. This is a core proceeding. The Court enforces its own orders under 11 U.S.C. § 105(a), Rule 37 (Bankruptcy Rule 7037), and its inherent power. Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991).

17. That enforcement authority is reached through a statutory sequence, not around it. Individual parties in interest have a right to be heard on administration of the estate (¶ 13 & 13A above); a Chapter 7 trustee, unless the Court orders otherwise, must furnish information concerning the estate and its administration when requested by a party in interest, and remains accountable for property received, 11 U.S.C. §§ 704(a)(2), 704(a)(7); that accounting lets the Court determine whether its own orders in the adversary proceeding remain unsatisfied; and only then does the Court decide, under its own authority, what enforcement is necessary. This Motion follows that sequence rather than asking the Court to treat the "Individuals" as though it had become a party prosecuting the Trustee's judgment.

18. The Eleventh Circuit has already described the tool. Civil contempt sanctions may be coercive, to obtain compliance with an existing order, or compensatory, to reimburse the losses the violation caused. They may not be used as a criminal punishment without the protections that attach to criminal contempt. Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1553–58 (11th Cir. 1996). That is the line this Motion respects. The daily figure requested below is coercive: it stops when production is complete. The dollar figure requested for subpoenas and enforcement fees is compensatory: it returns to the estate what the estate spent because the Defendants and Former Owners did not produce. Both are civil. Both are what § 105(a) and Rule 37(b)(2)(C) exist to do.

19. Rule 37(b)(2)(A) reaches a failure by a party or by a party's officer, director, or managing agent to obey a discovery order; Adv. Doc. 107 already applied that provision to the Former Owners as the Defendant entities' managing agents. Rule 37(b)(2)(C) is a separate subsection: it is mandatory in form, but it directs reasonable expenses, caused by the failure, absent substantial justification, against "the disobedient party, the attorney advising that party, or both." Rule 37(b)(2)(C) supports reimbursement by the disobedient Judgment Debtors. To the extent the Court finds, after notice and hearing, that Hughes and Cohan themselves are personally responsible for the continuing noncompliance, the Court may determine the appropriate personal contempt relief under Rule 37, § 105(a), and its inherent contempt authority, addressed further at ¶ 28 below. That

two-step sequence, rather than treating personal liability as automatic, keeps this request inside what Rule 37(b)(2)(C) actually authorizes. Any compensatory award should also be limited to the incremental expenses the noncompliance actually caused, not every hour of post-judgment discovery that might have occurred regardless.

**20.** Section 105(a) separately authorizes any order necessary to prevent an abuse of process. Serial filings that force the estate to spend creditor money answering paper that Main Case Doc. 347 and Adv. Doc. 107 ¶ 4 already restricts that abuse. This Court, on its own motion, has ordered Mr. Cohan to appear in person on November 9, 2026, and show cause why he should not be sanctioned after the Court found that many of the cases he cited appear not to exist, or that quotes from the cited cases do not exist. The volume behind that order is not small. The docket has absorbed what the joining individuals estimate as tens of thousands of pages of pro se paper from the Former Owners, much of it requiring the Trustee, his counsel, and this Court to chase citations that lead nowhere. The estate should not pay that bill.

**21. The Court does not need a new theory.** It needs to apply the orders already on the page, including that show-cause order, **and to put the cost of that volume back on the people who created it.** These Joining Individuals cite a parallel, not a comparison of judges and not a challenge to this Court's management of its docket. In the related individual proceeding of In re: David Choate Hughes II, Case No. 25-70566, United States Bankruptcy Court for the Central District of Illinois, **Judge Mary P. Gorman** acted **sua sponte**, entered a show-cause directive, and made it plain that sanctions would follow immediately if the abuse of process did not stop. The response was immediate. **That very day, Cohan withdrew the offending filings** and dismissed all previous motions that had been cluttering that proceeding. That is what a definite show-cause order, with immediate consequences attached, produces. The same court addressed a further and related abuse: the use of generative artificial intelligence by and around John-Michael Cohan to generate voluminous, inaccurate papers and drop them on a federal bankruptcy docket. Judge Gorman's point, which the "The Joining Individuals" asks this Court to take judicial notice of the Illinois docket on the record from her the precise language was, "***this is a serious problem throughout the country***", individuals using generative tools to flood a court with paper that does not hold up, wasting the resources and the time of the court. She did not leave that observation as commentary. She attacked the process, and the abuse stopped.

22. The joining individuals direct this Court to the docket in In re: David Choate Hughes II, No. 25-70566 (Bankr. C.D. Ill.), for September 1, 2026, where the audio recording of that day's hearing is on file, and to the Notice: immediately following a Motion to Withdraw Objections to Claims (Doc. 683) was filed that same day, citing "the Court's verbal orders" as the reason.

23. **Expedited consideration is requested under Local Rule 9013-1(e).** This paper is not filed as an emergency motion and does not attach a Certification of Necessity. The joining individuals ask for the earliest show-cause setting the calendar allows, even if that consideration is combined with upcoming hearings, and after a short written status from the Trustee if the Court directs one. The questions are three: what is the present status of compliance; who is responsible for what remains outstanding; and what coercive and compensatory relief is appropriate after notice. One or two joining individuals may present their own arguments first, for efficiency. Each other joining individual appears only for himself or herself and may, with the Court's permission, state that he or she adopts the same position without duplicative argument. No signer appears as counsel for, or as the representative of, any other signer.

24. A joint hearing on claim preservation and **Ponzi-fraud determination,** including The Feb. 2027 hearing is separate and this filing asks nothing about it. The joining individuals support the Court's findings at that hearing. Separately, on November 9, 2026, at 10:00 a.m., this Court has already required Mr. Cohan to appear in person and show cause why he should not be sanctioned. This Motion does not ask the Court to redo that November 9 hearing. It asks that production still missing under Docs. 50 and 107 not wait on that date, and that the accounting requested below include the estate cost of the paper that produced that show-cause setting.

## VI. WHY THE ESTATE IS BEING MADE TO PAY FOR THEIR CONTEMPT

25. It is understood, and the Court need not take this on faith, which is exactly why **Relief C** asks for a verified accounting on this docket, it is in the record in this case that related entities are showing, to have transacted a substantial sum, of approximately **$517,409.70,** transferred from Genie to Capitulum LLC., *(Examiner's Report (Doc. 146 ¶¶138, 149–150) and Doc. 61-1)* an insider company controlled by John Michael Cohan, the same individual seeking to proceed in *forma pauperis* in this Court to avoid paying fees and abusing the estate with a barrage of filings that continue to incur costs being passed on to this estate.

26. **The point is simple:** due to the deliberate actions of the former owners the estate was forced to use estate funds to obtain records that provide only a partial substitute for those the Court ordered the Defendants to produce. The named "The Joining Individuals" bear that expense through reduced distributions. They already provided consideration for loans that were never funded. **They are now paying a second time so the estate** can reconstruct records the Former Owners were directed to produce in July 2025 and again in September 2025. The cost of unpurged contempt is being passed on to the "The Joining Individuals", further reducing their recovery.

27. **The Former Owners have not been idle while that bill ran.** They have occupied this docket and a second courtroom. They serve discovery on claimholders. They notice appeals from orders that merely lifted a pause. They ask to proceed without paying a filing fee. They demand that small operators answer interrogatories about a section 341 interruption while the production order against the Defendant entities remains unpurged. Rule 33 is for parties. These individuals are not parties to that collateral fight. They should **not** have to hire counsel every time the Former Owners invent a new demand. Direction from this Court: what must be answered, what is already barred by Adv. Doc. 107 and Main Case Doc. 347, is the only practical way 60+ scattered claimholders know where they stand.

28. **This Court already has the tools.** Adv. Doc. 107 reserved further sanctions. Adv. Doc. 107 ¶¶ 3–4 preclude evidence and direct that violating pleadings be stricken. Main Case Doc. 347 restricts meritless pro se filings. Those provisions "remain in full force and effect." Adv. Doc. 107 n.7. To date, these provisions have not been applied with the force they were written to carry. It is blatantly obvious the Former Owners have created chaos everywhere in their path in order to conceal certain financial records. This Motion asks the Court to use the provisions already in place. The Court entered them. The Court can finish them. That is not a grievance against the Court. It is a request that the orders already signed be given their ordinary effect so this estate stops funding the non-compliance.

29. **Because personal, individual sanctions against Hughes and Cohan are addressed below, one further step belongs in the sequence first.** The Eleventh Circuit recognizes that when an order commands a corporation, the individuals officially responsible for its affairs may themselves be held in contempt if they know of the order and, having the ability, fail to take action within

their power to cause compliance. The prior adversary papers, Adv. Docs. 46, 50, 74, and 107, already record that production was ordered and that the required production did not follow. This paper does not retry that record. It asks the Court to enforce what those adversary papers already required. Before any personal coercive sanction runs against Hughes or Cohan individually, the cleaner sequence is for the Court to issue an order requiring each of them to show cause why he should not himself be held in personal civil contempt for failing, despite knowledge and ability, to cause the Judgment Debtor entities to comply with Adv. Docs. 50 and 107. After notice and a hearing on that show-cause order, the Court would determine, as to each of them: whether he had responsibility for compliance; whether he knew of the orders; whether he had possession or control of the responsive information; whether he had the ability to comply; and whether he personally failed to take appropriate action. Only after that personal finding would the coercive daily sanction requested in **Relief H** below properly run against either of them as individuals, rather than against the Judgment Debtor entities they controlled.

## VII. THE SANCTION THAT STAYS CIVIL AND STILL MOVES THE NEEDLE

**30.** The joining individuals request **two** numbers, both civil, both payable to the estate.

**31.** First, **compensatory**: the actual, incremental cost: the Trustee itemizes, subpoenas and counsel time on Adv. Docs. 46 and 74; any further compulsory process required to complete the file; and the hours spent reviewing, answering, and chasing the Former Owners' pro se filings that this Court has now put on a show-cause calendar because cited cases or quotes from those cases appear not to exist. Rule 37(b)(2)(C), § 105(a), and Jove authorize that reimbursement. It is not a penalty. It is a refund to the estate of money spent on paper the estate should never have had to buy.

**32.** Second, **coercive**: a daily sanction that runs until the accounting categories still outstanding are produced, including who was authorized to transfer and who transferred. The amount is this Court's. The joining individuals suggest **$10,000** per day as a figure that, on this record, a multimillion-dollar estate, a year past the first deadline, estate-funded workarounds, and the records still in the Former Owners' control to name who sent the wires, is large enough to be noticed and is fair. They do not presume to set the number. If the Court finds a different amount sufficient to coerce and not to punish, that is the Court's call. An in forma pauperis affidavit does not answer an interrogatory. Inability to pay a judgment is not inability to name the person who sent a wire. If a daily fine cannot be

collected in cash, the non-monetary tools already in Adv. Doc. 107 still apply. Personal coercive sanctions against Hughes or Cohan individually should follow only the personal finding requested in **Relief E** below.

**33.** If the date certain is missed, the Court has whatever further civil remedy the law supplies to enforce its own order. This paper does not catalog those remedies. Everyone in this case, including the Former Owners, already knows they exist. The joining individuals ask only that the order state that missed compliance will be met with the next enforcement step the Court determines is necessary.

## VIII. PRAYER

**WHEREFORE**, the joining individuals request that the Court enter an order, on an expedited basis:

**A.** Accepting this Joint Joinder for filing in the main case as a paper by named individuals to be heard, with a related entry on the adversary docket, and stating that this paper does not seek intervention under Rule 7024, or, to the extent leave is required, granting leave under Fed. R. Bankr. P. 2018(a) limited to the matters specified in ¶ 13A;

**B.** Setting an expedited show-cause hearing at the earliest date the Court's calendar allows, limited to the status of compliance with Adv. Docs. 50 and 107, responsibility for any remaining noncompliance, and what additional coercive or compensatory relief is appropriate;

**C.** Directing the Trustee, pursuant to 11 U.S.C. §§ 704(a)(2) and 704(a)(7), to lodge a written accounting identifying what was produced by the Defendants or Former Owners, what was obtained independently (including by subpoena), what remains outstanding or still concealed, including formation files, bank resolutions, and the identity of persons authorized to initiate and persons who initiated material transfers, the verified cost to the estate of substitute records, and the verified incremental cost to the estate of reviewing and responding to the Former Owners' pro se filings, including filings in which cited cases or quotations appear not to exist; nothing in this request seeks Trustee work product, privileged communications, sealed material, or other confidential information;

**D.** Confirming that the Judgment Debtor Defendants remain subject to the contempt order in Adv. Doc. 107 and that the Former Owners remain subject to the enforcement and preclusion provisions that Order applied to them;

E. Ordering David C. Hughes II and John-Michael Cohan each to show cause why he should not be held personally in civil contempt for failing, despite knowledge and ability, to cause the Judgment Debtor entities to comply with Adv. Docs. 50 and 107, with the Court to determine after notice and a hearing on that order whether each had responsibility for compliance, knowledge of the orders, possession or control of the responsive information, the ability to comply, and personally failed to take appropriate action (see ¶ 28 above);

F. If the accounting shows incomplete compliance, compelling complete production by a date certain of all categories required by Adv. Docs. 50 and 107, not merely the statements a bank will produce on subpoena;

G. Awarding compensatory expenses to the estate in the incremental amount actually caused by the noncompliance and by the volume of unnecessary pro se filings, including filings this Court has placed on a show-cause calendar for citations that appear not to exist, as the Trustee quantifies and distinguishes from expenses that would have been incurred regardless;

H. Imposing a coercive daily sanction payable to the estate until purge, in an amount the Court determines after notice and hearing evidence regarding ability to comply and the amount necessary to secure compliance; the joining individuals suggest $10,000 per day as a starting figure for the Court's consideration, without requesting any automatic escalation absent a further evidentiary record supporting a higher figure; personal coercive sanctions against Hughes or Cohan individually should follow only the personal finding requested in Relief E above;

I. Applying Adv. Doc. 107 ¶¶ 3–4 and Main Case Doc. 347, and providing that no party shall be required to respond to a filing subject to those existing restrictions unless the Court directs a response or the Bankruptcy Rules otherwise require one;

J. After the personal finding requested in Relief E, authorizing the Trustee to issue remaining compulsory process and taxing that cost, including process already used, to the persons the Court finds personally responsible, jointly and severally as the Court determines, payable to the estate; until that finding, taxing such costs to the Judgment Debtor entities;

K. Stating that if the date certain is missed, the Court will consider the next civil enforcement remedy it determines is necessary; and

L. Granting such other relief as is just under Rule 37 and 11 U.S.C. § 105(a).

Respectfully submitted.

# CERTIFICATE OF SERVICE

I, Lea Muse, declare under penalty of perjury as follows:

On October 7, 2026, I mailed a true and correct copy of this Joint Joinder, together with the assembled signature pages, by certified United States mail to the Clerk of the United States Bankruptcy Court, Middle District of Florida, 300 North Hogan Street, Suite 3-150, Jacksonville, Florida 32202, for filing in Case No. 3:24-bk-00496-BAJ.

On October 7, 2026, I emailed a true and correct courtesy copy of this Joint Joinder, together with the assembled signature pages, to Aaron R. Cohen, Chapter 7 Trustee, and Raye C. Elliott, counsel for the Trustee, at the following email addresses:

**Aaron R. Cohen**: aaron@arcohenlaw.com

**Raye C. Elliott:** raye.elliott@akerman.com

I am an individual signer of this Joint Joinder and the person who personally performed the mailing and service described above. My signature on this certificate certifies those acts only.

This certificate does not assert that I am a registered CM/ECF filing user.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____________________

Signature: ______________________
Lea Muse
1133 E 83rd Street
Chicago, IL 60619

**Raye C. Elliott, Esq.**
Counsel for Aaron R. Cohen, Chapter 7 Trustee
Akerman LLP
401 East Jackson Street, Suite 1700
Tampa, FL 33602

**Aaron R. Cohen**
Chapter 7 Trustee
P.O. Box 4218
Jacksonville, FL 32201-4218

John Michael Cohan
**Email:** iustusprocessus@outlook.com

David Hughes
**Email:** davidchoatehughes@gmail.com

# SIGNATURE PAGE TO THE JOINT JOINDER OF NAMED INDIVIDUALS TO BE HEARD IN SUPPORT OF FURTHER ENFORCEMENT OF THE AUGUST 27, 2025 CONTEMPT ORDER [ADV. DOC. 107] AND THE JUNE 25, 2025 COMPEL ORDER [ADV. DOC. 50], FOR A TRUSTEE ACCOUNTING, AND FOR A SHOW-CAUSE HEARING ON FURTHER CIVIL RELIEF

By signing a line below I state: I have read the Joint Joinder identified above; I understand it; I agree with it; I join it; and I support the relief it requests. I sign only in my individual capacity. I do not sign for any other person or for any company. The facts about me and my claim are true; the rest I believe is accurate based on the cited record.

| # | Printed name / address / email / phone | Signature (individual only) | Date |
|---|---|---|---|
| 1 | Lea Muse<br>1133 E 83rd Street 171, Chicago, IL 60619<br>lea.bellerealty@gmail.com<br>818-261-8583 | Lea Muse | 10/14/26 |
| 2 | Kim Nash<br>110 Velsco Lane, Port Sulphur, LA 70083<br>Kipnash2@gmail.com<br>504-343-6340 | Signed by:<br>Kim B Nash<br>5C82ABE6E4A5407... | 10/12/2026 |
| 3 | Nicholas Virthe<br>6960 Brescia Way, Orlando, FL 32819<br>nicholas@sensobeachclub.com<br>407-488-0526 | DocuSigned by:<br>Nicholas Virthe<br>E7F77553329C4C1... | 10/13/2026 |
| 4 | Garrett Calaway<br>gvcalaway@gmail.com<br>2907 Bismarck ave Amarillo, tx 79118 (8325782982) | DocuSigned by:<br>[illegible]868DD1979F461... | 10/12/2026 |
| 5 | Michael Thompson<br>mfthompson@gmail.com<br>1448 W Salmon Caddis Dr. Bluffdale, UT 84065 | DocuSigned by:<br>9ACE9C01EE7A4D1... | 10/13/2026 |
| 6 | Richard Ellison<br>richard.ellison@yahoo.com<br>(862) 208-9925 | DocuSigned by:<br>Richard Ellison<br>298CE5199AD24C7... | 10/13/2026 |

FedEx® Office

# Fax Cover Sheet

Date 10/14/2026 Number of pages 19 (including cover page)

## To:

Name Clerk Office

Company

Telephone

Fax

## From:

Name

Company

Telephone 818-261-8583

Comments Please let me know if you have any questions regarding this filing.

7 90363 00711 1
Fax - Local Send

7 90363 00714 2
Fax - Domestic Send

7 90363 00720 3
Fax - International Send

**fedex.com 1.800.GoFedEx 1.800.463.3339**

© 2021 FedEx. All rights reserved. Products, services and hours vary by location. 622.OP03.001

2188309R

ORIGIN ID:GYYA 18182618583
LEA MUSE
1133 EAST 83RD STREET
CHICAGO, IL 60619
UNITED STATES US

SHIP DATE: 14OCT26
ACTWGT: 1.00 LB
CAD: 308600009/INET4762

BILL CREDIT CARD

TO UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
300 NORTH HOGAN STREET
SUITE 3-150
JACKSONVILLE FL 32202
(818) 261-8583
INV:
PO:
REF:
DEPT:

58KJ1/70DF/484B

FedEx Express

E

FedEx

TRK# 0201 8786 7682 8704

THU - 15 OCT 10:30A
PRIORITY OVERNIGHT

XX NIPA

32202
FL-US JAX

58KJ1/70DF/484B

FedEx®

**This envelope is only for FedEx Express® shipments.**
You can help us get your package safely to its destinatio
items securely. Need help? Go to **fedex.com/packaging**
Check your FedEx shipping document, the current FedEx S

4357 THU 10/15 08:07
300 N HOGAN ST
PRIORITY OVERNIGHT
408-4051
ETP:1
SP:PD:100:Y
32202-4204-00
JACKSONVILLE,FL

Part # 156297-435 RRDB2 EXP 09/27